Caruthers, J.,
delivered the opinion of the Court.
*259 This hill was filed to test the validity of the sale of an expectancy.
On the 18th of October, 1850, James Fitzgerald made his will, which was proved and recorded after his death in July, 1858, and letters testamentary issued to defendant Vestal. He directed his estate, both real and personal, to be sold, and the proceeds to be divided equally between his children, including William and Amos B. Fitzgerald. These last legatees, on the 15th of October, 1850, sold their expectant interest in their father’s estate to James E. Dodson, and executed the following writing, which was regularly proved and registered :
“ We, William Fitzgerald and Amos B. Fitzgerald, have this day sold and do hereby convey to James E. Dodson all of our undivided interest in our father’s estate, both real, mixed, and personal; moneys, or any other valuable thing which he is now seized or possessed of, or hereafter may be; and all increase of property, either money, land, or slaves, or any other valuable thing, for which he has this day paid in hand to us each ¡§200, And we do authorize and empower him to execute and deliver all needful instruments and papers, whether under seal or otherwise; to institute and prosecute to final judgment and execution all process in law or equity; to defend all suits against us about the premises; to submit the same to referees, or to compromise the same; and to do and perform all such acts as he shall deem necessary in the premises. We do hereby respectfully submit the same this 15th Oct., 1850.”
Jesse H. Fitzgerald, who became a judgment creditor *260 of bis brother, Amos B., in 1851, filed this attachment bill against the said Amos B., who lived in Texas, and the executor, to subject the interest of Amos B. under the will to the satisfaction of his debt. Whereupon, the executor filed his bill of interpleader against Dodson, who claimed the interest of Amos B. in his father’s estate under the above contract, and the said Jesse and Amos B.
The only question is, whether the sale to Dodson was good in law, and passed the right which afterwards accrued as against the creditor of Amos B. The facts established by proof are briefly these: The father of the vendors was consulted, approved of the sale, and promised to make his will, as he had before determined, and as it was done three days after the sale. He proposed to the draftsman to give the shares of Amos and William directly to Dodson, but was advised that could not be legally done. His sons wanted to emigrate to Texas, which they did the next year. The consideration paid was a good one at the time and under all the circumstances. The suit at law by Jesse against Amos, which was afterwards ripened into a judgment for $399, was pending at the time of the sale, and proof is made tending to prove that the sale was made to defeat that claim, and to implicate Dodson in that object and purpose.
This last ground could have no effect upon the validity of the sale in any aspect of the case or state of proof. It was not a transfer of any property, a right to which a creditor could subject to his debt, as it was only an expectancy depending entirely upon the will of the father.
‘ But if this was not so, there is no sufficient evidence to show that such a purpose, if it existed on the part of Amos, was participated in by Dodson.
*261 There is, then, nothing in the way of the main question in the case, which is, whether a valid sale could under the circumstances he made of such a right or interest. And we have no hesitation in holding, with the Chancellor, that it could, both upon reason and authority. Such sales, particularly by young expectant heirs or persons in necessitous circumstances, are looked upon with jealousy, and will be closely scrutinized, but, when fair and honest, will be sustained, especially when known and approved by the parent from whom the estate is to be derived, as in the case before us. 2 Story, Eq., §§ 1040,-1055. “A naked possibility or expectancy of an heir to his ancestor’s estate, or even of the anticipated rights of a person as next of kin, may be the subject of a contract in equity, which will be equivalent to an assignment of the property, if and when it shall fall into possession.” 2 Spence, 865.
But this question is too well settled to require or even allow debate at this day.
The contingent and uncertain character of the subject-matter of the contract can only affect the price, but not the assignability of the thing. Eor this reason, the advantageous character of the bargain, when the contingent events favor the purchaser, as in this case, is no argument against the fairness of the sale.
The decree is affirmed.